Thomas E. BASS, Petitioner,

v.

Lucille HARPER et al., Respondents.

No. B–1296.

Supreme Court of Texas.

June 4, 1969.

Henderson, Bryant & Wolfe, William R. Bryant, Sherman, for petitioner.

O. R. Tipps, Wichita Falls, Duncan W. Holt, Jr., Tulsa Okl., for respondents.

GREENHILL, Justice.

The problem in this suit for a declaratory judgment is to determine the amount of oil and gas royalty which was conveyed from the plaintiff, Thomas E. Bass, to W. O. Miller under whom the defendant Harper claims. The trial court, sitting without a jury, held that the instrument in question conveyed, among other things not here in dispute, an undivided 2/7ths (6/14ths) of 1/8th of the royalty. The Court of Civil Appeals at Fort Worth considered that the instrument was not ambiguous, and it affirmed. 437 S.W.2d 648. We reverse and here direct the entry of judgment by the trial court that the instrument granted and conveyed a 1/14th of the 1/8th royalty.

The facts are relatively simple. The solution is not. It is agreed that the 90 acres in question had been leased for oil and gas; that the plaintiff Bass owned the surface of the land, the executive rights to execute leases, and was the owner of 8/14ths of the 1/8th royalty under the existing lease. The other 6/14ths of the royalty were owned by people other than Bass. These outstanding 6/14ths royalty interests had been specifically reserved by people who had conveyed the property to Bass.

It is the contention of Bass that he, owning 8/14ths of the royalty, conveyed a half-interest or 7/14ths; but the grant of the 7/14ths was expressly burdened with, or subject to, the 6/14ths of outstanding royalty so that the net effect was to convey 1/14th of the royalty. It is the contention of Harper that though the grant was of an undivided one-half interest (7/14ths), Bass meant to convey a half of the interest he owned; i. e., 1/2 of 8/14ths or 4/14ths; and that the mention in the grant of the outstanding 6/14ths royalty was to protect Bass upon his warranty. Harper does not con-

tend that Bass conveyed a full undivided one-half, or 7/14ths, royalty interest.

Developing the matter more in detail, it appears that in 1957, Bass, owning the surface and 9/14ths of the 1/8th royalty, executed the instrument in question to W. O. Miller. The conveyance is on a printed form entitled "Warranty Deed." Its provisions are in substance as follows:

"* * * I, Thomas E. Bass, for and in consideration of $10.00 * * * have granted, and by these presents do grant, sell and convey unto the said W. O. Miller * * * all that certain undivided one-half interest in and to the following described tract of land in Cooke County, Texas." [Then follows a metes and bounds description.]

"This Grant is subject to the Mineral Reservation contained in the following Deed[s]: * * *." [Then follows a list of nine deeds from various people to Bass in which a total of 9/14ths royalty interests had been reserved. Each of the reserving instruments had been recorded; and the conveyance from Bass to Miller gives the book and page reference of the recordations.]

"TO HAVE AND TO HOLD the above described premises * * * unto the said W. O. Miller, his heirs and assigns forever; * * *."

Then follows a general warranty:

"* * * and I do hereby bind myself, my heirs, executors and administrators to Warranty and Forever Defend all and singular the said premises unto the said W. O. Miller, his heirs and assigns, against every person whomsoever lawfully claiming or to claim the same, or any part thereof."

In short, the instrument from Bass to Miller on its face grants an undivided one-half interest in the 90 acres and "this grant" was subject to mineral reservations "in the following deeds." The reservations in the deeds were 9/14ths of the 1/8th royalty. The instrument concludes with the warranty.

In 1958, W. O. Miller conveyed to his son, Paul, by a "Warranty Deed," an undivided one-fourth interest in the same property. The grant in that deed was subject to the same nine "mineral reservations" as were contained in the grant from Bass to W. O. Miller.

In 1963, W. O. and Paul Miller joined in executing a "Mineral Deed" to the defendant Harper. It conveyed (or purported to convey), with a covenant of general warranty, an undivided (and unqualified) one-half interest in the oil, gas and other minerals in and under the 90 acre tract. The Millers subsequently reconveyed to Bass their interest in the surface of the land. Neither W. O. nor Paul Miller is a party to this suit, and any problems between them and their grantee Harper (including the general warranty of the Millers to Harper) are not before this Court. For purposes of this opinion, it will be assumed that the defendant Harper received and owns whatever royalty interest was conveyed in the instrument from Bass to W. O. Miller.

The trial court held that the instrument from Bass to W. O. Miller conveyed to Miller a one-half interest in the surface, and this holding is not disputed. That court also held that Bass conveyed a half of the royalty which he owned. That is, Bass, who owned 9/14ths of the royalty, conveyed to Miller 4/14ths (or 2/7ths) of the royalty. The court treated the portion of Bass's conveyance which said, "This grant is subject to the mineral reservations [of 9/14ths]" as merely protecting Bass on his warranty in the conveyance of 4/14ths royalty.

■ We agree with the Court of Civil Appeals that the instrument in question is not ambiguous. Since this is so, the rules of construction as to ambiguous instru-

ments may not be applied. *2 McCormick & Ray, Texas Law of Evidence* § 1685 et seq. (2nd ed. 1956). This is not a suit to reform the deed in order to make it conform to the intention of the parties, if indeed their intentions were different from those stated in the deed.[1] The presumption is that the instrument, duly executed, expresses the intentions of the parties. *Bumpass v. Bond*, 131 Tex. 266, 114 S.W.2d 1172 at 1175 (1938).

Since Bass owned more than a half interest in the minerals or royalty, he had the power to convey a half interest in such minerals or royalty. The grant in the instrument is quite plain. The granting clause conveys "all that certain undivided half interest" in 90 acres of land. There are no words limiting the grant to one-half of whatever interest Bass owned.

It is also clear that *the grant* itself "is subject to the mineral reservations" [$\frac{9}{14}$ths] contained in the deeds specifically set out and referred to by book and page of their recording. All of these reservations were in the chain of title of Bass and Miller, and the grantee Miller was charged with notice of them. There was no attempt to conceal them, and the total amount of the reservations was correctly stated.

■ It is contended that the "subject to" provision refers only to the warranty. The warranty is a separate covenant from the grant. It is not a part of the conveyance. It neither strengthens, enlarges nor limits the title conveyed. It is a contract on the part of the grantor to pay damages in the event of failure of title. *Richardson v. Levi*, 67 Tex. 359, 3 S.W. 444; *City of Beaumont v. Moore*, 146 Tex. 46, 202 S.W. 2d 448 at 453; *Gibson v. Turner*, 156 Tex. 289, 294 S.W.2d 781 at 787 (1956); *Bond v. Bumpass*, 100 S.W.2d 1047 (Tex.Civ. App.1936, affirmed 131 Tex. 266, 114 S.W. 2d 1172).[2]

The instrument in question does not relate the outstanding mineral royalty interests to the warranty. It could have done so, but it is tied specifically to the grant. The *grant*, not the *warranty*, is made subject to the outstanding interests. As stated in *Bumpass v. Bond*, 131 Tex. 266, 114 S.W. 2d 1172 at 1175, the courts, in the absence of fraud, accident or mistake, have neither the right nor the authority to rewrite an unambiguous instrument.

In *Bumpass v. Bond*, the grantor, Bond, owned only $\frac{2}{11}$ths of the title. Bond executed a deed which on its face conveyed the entire title to Bumpass; but Bond limited his warranty to $\frac{2}{11}$ths of the fee. The grantee, in turn, executed a vendor's lien note and deed of trust in favor of Bond covering the *entire* title. Allen had a prior lien on $\frac{9}{11}$ths. The grantee Bumpass defaulted to Bond, and Bond sought foreclosure on the entire title subject to Allen's lien. Bumpass contended that since Bond actually had owned only $\frac{2}{11}$ths and had limited his warranty to $\frac{2}{11}$ths, the *grant* should have been construed to be $\frac{2}{11}$ths and the vendor's lien and the deed of trust given by Bumpass should likewise be construed to cover only $\frac{2}{11}$ths of the title. This

1. The plaintiff Bass testified that the instrument did in fact comply with his intentions; i.e., he intended to convey to Miller a half interest ($\frac{7}{14}$ths); and that his intention was to subject the grant with the $\frac{9}{14}$ths outstanding royalty. The grantee Miller did not testify. There is evidence that the grantees treated the conveyance as conveying a half of Bass's interest; and long after the execution of the instrument, the defendant Sinclair Refining Company (a stakeholder) so interpreted the instrument.

2. The warranty clause has sometimes been used to have the effect of passing an after-acquired title; but this concept is based on an estoppel, denying to the grantor the right to assert title in contradiction to, or breach of, a covenant of general warranty. *Duhig v. Peavy-Moore Lumber Co.*, 135 Tex. 503, 144 S.W.2d 878 (1940). No after-acquired title is involved here.

Court held otherwise. The grant of Bond and the vendor's lien and deed of trust of Bumpass encompassed the entire land; the instruments were not ambiguous; and Bond was held to be entitled to a foreclosure on the entire land, subject to the superior lien of Allen on 9/11ths. The holding is that the conveyance and the warranty, both unambiguous, perform separate functions. Either the grant or the warranty, or both, may be limited. But a limitation of the warranty is not a limitation or enlargement of the grant. In our case, the *grant* or conveyance is limited, not the warranty. We, therefore, are unable to agree with the Court of Civil Appeals that the words clearly and specifically limiting the grant were intended merely to limit the covenant of general warranty.

As stated at the outset, this suit was instituted as one for a declaratory judgment. We disagree with the construction of the courts below as to the amount of royalty interest conveyed in the deed from Bass to Miller. Accordingly the judgments of the courts below are reversed; and, as to the declaration of the rights of the parties, we here render judgment that under the specific wording of the instrument, Bass granted and conveyed to Miller an undivided one-half (7/14ths) of the 1/8th royalty, and that the one-half interest granted (7/14ths) was subject to the outstanding 9/14ths royalty. This means that Bass conveyed 1/14th of the royalty, not 4/14ths as held by the courts below.

The plaintiff Bass also prayed in the district court for an accounting as to the royalties which had been paid and as to the royalties which were being held pending the disposition of this cause. The judgments of the courts below were reversed in the paragraph just above, and the cause is remanded to the district court for further proceedings not inconsistent with this opinion, including such accounting as may be necessary.